ORAL ARGUMENT NOT YET SCHEDULED

No. 12-1241

IN THE

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

MATTHEW J. COLLINS, *Petitioner,*

v.

SECURITIES AND EXCHANGE COMMISSION, *Respondent.*

_____

On Petition For Review of An Order of the Securities and Exchange Commission
in Case SEC No. 33-9299

_____

**CORRECTED BRIEF FOR PETITIONER**

_____

Erik S. Jaffe                          Robert G. Heim
ERIK S. JAFFE, P.C.                     MEYERS & HEIM LLP
5101 34th Street, N.W.                  444 Madison Avenue, 30th Floor
Washington, D.C.  20008                 New York, NY 10022
(202) 237-8165                          (212) 355-7188

*Of Counsel*                            *Counsel for Petitioner*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Cir. Rule 28(a)(1), Petitioner Matthew J. Collins ("Collins") files this Certificate as to Parties, Rulings and Related cases as follows:

### A.    PARTIES

The parties to this case are Collins and the Securities and Exchange Commission ("SEC" or "Commission").   The June 30, 2009 Order Instituting Proceedings against Collins also named as respondents in addition to Collins: Prime Capital Services, Inc., Gilman Ciocia, Inc., Michael P. Ryan, Rose M. Rudden, Christie A. Andersen, Eric J. Brown, Kevin J. Walsh and Mark W. Wells.

### B.    RULINGS UNDER REVIEW.

Collins' Petition arises from the Commission's Opinion dated February 27, 2012 that imposed $310,000 in civil penalties on him and the Commission's Order Denying Collins' Motion for Reconsideration of Civil Penalties dated April 5, 2012.

### C.    RELATED CASES.

There are no pending or related cases of which counsel is aware.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ...................................................................................... i

    A.  PARTIES ....................................................................... i

    B.  RULINGS UNDER REVIEW. ............................................. i

    C.  RELATED CASES. .......................................................... i

TABLE OF CONTENTS ........................................................ ii

TABLE OF AUTHORITIES ................................................... iv

JURISDICTION .................................................................... 1

ISSUES PRESENTED FOR REVIEW ..................................... 2

STATUTES, RULES, AND CONSTITUTIONAL PROVISIONS INVOLVED ...................................................................... 2

STATEMENT OF THE FACTS ............................................... 2

SUMMARY OF ARGUMENT ................................................. 11

STANDING .......................................................................... 12

ARGUMENT ........................................................................ 13

I.    THE COMMISSION ABUSED ITS DISCRETION BY IMPOSING CIVIL PENALTIES OF 106 TIMES THE AMOUNT OF DISGORGEMENT AND MORE THAN TWICE WHAT THE ALJ IMPOSED EVEN AT A MISTAKENLY HIGHER PENALTY LEVEL. ................................. 13

    A.  The Commission's Decision Was Arbitrary, Capricious and an Abuse of Discretion ................... 16

**B. The Commission Failed to Explain Why It Departed From Its Own Precedent When Imposing the Draconian Civil Penalties on Collins.** ...................................... 24

**II. THE CIVIL PENALTIES IMPOSED BY THE COMMISSION VIOLATE THE EXCESSIVE FINES CLAUSE OF THE EIGHTH AMENDMENT BECAUSE THEY ARE GROSSLY DISPROPORTIONAL TO THE GRAVITY OF COLLINS'S OFFENSE.** ............................................................. **25**

**CONCLUSION** ............................................................. **31**

## TABLE OF AUTHORITIES

### Cases

*Berko v. SEC*, 316 F.2d 137 (2d Cir. 1963) ............................................................16

*BMW of N. Am., Inc. v. Gore,* 517 U.S. 559 (1996) .................................................30

*Jost v. Surface Transp. Bd.*, 194 F.3d 79 (D.C. Cir. 1999).......................................24

*Marrero v. Dugger*, 823 F.2d 1468 (11th Cir. 1987), *cert. denied,* 485
    U.S. 965, 970 (1988) ...........................................................................................28

*McCarthy v. SEC*, 406 F.3d 179 (2d Cir. 2005) .......................................................16

*Monetta Fin. Servs. v. SEC*, 390 F.3d 952 (7th Cir. 2004)......................................16

*Rapoport v. SEC,* 682 F.3d 98, 103 (D.C. Cir. 2012)...............................................13

*\*Rockies Fund, Inc. v. SEC*, 428 F.3d 1088 (D.C. Cir. 2005) ............................13, 24

*SEC v. Aimsi Technologies, Inc.*, 650 F. Supp.2d 296 (S.D.N.Y. 2009).................22

*SEC v. Becker*, 2010 U.S. Dist. LEXIS 52623 (S.D.N.Y. May 28,
    2010) .....................................................................................................................21

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ............................................................25

*SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185 (D. Nev. 2009) ..................21

*SEC v. Great Am. Techs., Inc.*, 2010 U.S. Dist. LEXIS 34830
    (S.D.N.Y. Apr. 8, 2010) ......................................................................................22

*SEC v. Haligiannis*, 470 F. Supp. 2d 373 (S.D.N.Y. 2007).....................................22

*SEC v. Koenig*, 557 F.3d 736 (7th Cir. 2009)...........................................................22

*SEC v. Pentagon Capital Mgmt. PLC*, 2012 U.S. Dist. LEXIS 43046
    (S.D.N.Y. Mar. 28, 2012)....................................................................................21

*SEC v. Razmilovic*, 822 F. Supp. 2d 234 (E.D.N.Y. 2011) .....................................22

\* Authorities upon which we chiefly rely are marked with asterisks.

*SEC v. Solow*, 554 F. Supp. 2d 1356 (S.D. Fla. 2008) ............................................22

*SEC v. Souza*, 2011 U.S. Dist. LEXIS 59626 (D. Cal. 2011).............................22

*SEC v. World Info. Tech., Inc.*, 590 F. Supp.2d 574 (S.D.N.Y. 2008) ...................22

*SEC v. Yuen*, 272 Fed. Appx. 615 (9th Cir. 2008)...........................................21

*\*Steadman v. SEC*, 603 F.2d 1126 (5th Cir. 1979), *aff'd*, 450 U.S. 91
 (1981).................................................................................................16

*\*United States ex rel. Bunk v. Birkart Globistics Gmbh & Co.,* 2012
 WL 488256 (E.D. Va., Feb. 14, 2012) ..........................................28, 30

*\*United States v. Bajakajian*, 524 U.S. 321, 334, 118 S. Ct. 2028, 141
 L. Ed. 2d 314 (1998), *superseded on other grounds, as stated in
 United States v. Jose,* 499 F.3d 105 (1st Cir. 2007)............................25

*United States v. Morse*, 1997 WL 181043 at \*3 (S.D.N.Y. Apr. 14,
 1997)...............................................................................................26

*WHX Corp. v. SEC*, 362 F.3d 854 (D.C. Cir. 2004) ................................15

**Statutes and Rules**

15 U.S.C. § 77q(a) ...........................................................................5, 7

15 U.S.C. § 78j(b) ............................................................................5, 7

15 U.S.C. § 78*o*(b) ...............................................................................7

15 U.S.C. § 78u .................................................................................13

15 U.S.C. § 78y ...................................................................................1

15 U.S.C. § 80(b) ..........................................................................13, 15

17 C.F.R. § 240.10b-5........................................................................5, 7

17 CFR § 240.17a-3 .............................................................................6

5 U.S.C. § 706(2)(A)...........................................................................13

## Other Authorities

*In the Matter of Daniel R. Lehl, Robert Schlien, American Capital Network, Inc., Melvin L. Levine, William David Jones, And Philip M. Georgeson*, 55 S.E.C. 843 (May 17, 2002)......................................................19

*In The Matter Of David Henry Disraeli and Lifeplan Associates, Inc.*, Admin. Proc. File No. 3-12288, 2007 SEC LEXIS 3015 (Dec. 21, 2007).................................................................................................20

*In The Matter Of Feeley & Willcox Asset Management Corp. and Michael J. Feeley,* 56 S.E.C. 616 (July 10, 2003)................................19

\**In the Matter of FXC Investors Corp.*, 2002 WL 31741561(Admin Pro. File No. 3-10625, December 9, 2002) ....................................27, 29

*In the Matter of Gregory O. Trautman*, Admin. Proc. File No. 3-12559, 2009 SEC LEXIS 4173 (Dec. 15, 2009) ................................19

*In the Matter of Guy P. Riordan,* 2009 SEC LEXIS 4166, Admin. Proc. File No. 3-12829 (Dec. 11, 2009)..............................................18

*In the Matter of Leo Glassman*, 46 S.E.C. 209 (1975) ...........................16

*KPMG Peat Marwick LLP*, 54 S.E.C. 1135 (2001).................................15

*Marshall E. Melton*, 56 S.E.C. 695 (2003) ............................................15

*SEC v. Coadum Advisors, Inc.*, 2010 SEC LEXIS 304 (SEC 2010) ......................23

*SEC v. Haugen*, 2010 SEC LEXIS 611 (SEC 2010) ................................23

*Zion Capital Management LLC And Ricky A. Lang*, Admin. Proc. File No. 3-10659, 2003 SEC LEXIS 2939 (Dec. 11, 2003)........................20

## JURISDICTION

This Court has jurisdiction pursuant to 15 U.S.C. § 78y, which provides that "[a] person aggrieved by a final order of the Commission entered pursuant to this title may obtain review of the order in the United States Court of Appeals for the Circuit in which he resides or has a principal place of business, or for the District of Columbia Circuit." 15 U.S.C. § 78y(a)(1).

## ISSUES PRESENTED FOR REVIEW

1.  Whether the Securities and Exchange Commission abused its discretion in imposing an excessive monetary penalty on petitioner of $310,000 (106 times the amount of disgorgement)without adequate justification or explanation?.

2.  Whether the monetary penalty imposed on petitioner violates the Excessive Fines Clause of the Eighth Amendment because it is grossly disproportional to the gravity of petitioner Collin's offense?

## STATUTES, RULES, AND CONSTITUTIONAL PROVISIONS INVOLVED

The relevant statutory provisions at issue in this case are attached in an Addendum pursuant to Circuit Rule 28(a)(5).

## STATEMENT OF THE FACTS

1.  This case involves a substantial civil penalty of $310,000 imposed on Petitioner Collins for securities law violations not involving any substantial risk of loss to investors and only minimal personal gain to Collins. That penalty was 106 times the amount of the commissions Collins was ordered to disgorge, and over twice the amount of the penalty imposed by the Administrative Law Judge ("ALJ") – even though the Commission found that Collins' conduct was not as egregious as what the ALJ found.  Petitioner contends that such a draconian penalty is arbitrary and capricious and violates the Excessive Fines Clause of the Eighth Amendment.

2

2.  Collins was a financial adviser in Florida, associated with Prime Capital, Inc. ("Prime Capital"), a registered broker-dealer. Opinion of the Commission, February 27, 2012 ("Opinion"), at 6.  From December 2002 to March 2005, Collins supervised Eric Brown, another financial adviser involved in the events leading to these proceedings.  Opinion at 5, 8.  Some of the products that Collins and Brown recommended to certain of their clients were variable annuities. Opinion at 5.  A variable annuity is a contract between an investor and an insurance company in which the investor agrees to make a lump-sum payment or a series of payments in exchange for a regular stream of payments or a lump sum payment in the future.  *Id.*  Variable annuities offer investors a range of investment options including mutual funds that invest in stocks, bonds and money market instruments.  *Id.*  The value of a variable annuity depends on the performance of the underlying investments.  *Id.*

Variable annuities generally offer a death benefit which provides that if the investor dies before receiving payments from the insurance company, the investor's designated beneficiaries are guaranteed to receive a specified amount which is typically at least the amount of the investor's payments to the insurance company less any withdrawals made by the investor.  *Id.*  Variable annuities generally assess surrender charges if the investor withdraws money during the early years of the investment, although contracts will often allow an investor to

3

withdraw certain amounts of his or her account without payment of the surrender charge. *Id.* Whether such annuities are appropriate for a particular investor depends on a number of factors including the investor's financial circumstances, investment time horizon, and investment objectives. Opinion at 5-6. The annuities at issue in this case were safe investments and did not expose any customers to a significant risk of loss. Opinion at 25.

Because variable annuities contain both an investment component and an insurance component they are regulated by securities regulators such as the SEC and by insurance regulators. *Id.* Variable annuities are the only investment products that are involved in this matter. *Id.*

3. In August 2003, the Florida Department of Financial Services (the "State of Florida") filed an administrative complaint against Collins's supervisee, Brown, alleging that Brown made false statements in connection with the sale of variable annuities to three of his customers. Opinion at 7. Because Brown did not respond to the administrative complaint the State of Florida revoked Brown's license to sell insurance products. *Id.* Brown appealed the revocation of his insurance license and stated that he had never received the administrative complaint. *Id.* The State of Florida reinstated Brown's insurance license in April 2004 pending his appeal on the condition that Brown not market annuities to individuals over the age of 65 years who were not currently his clients. *Id.*

4

On June 30, 2009, the Commission commenced an administrative proceeding against Brown, Petitioner Collins, and others. Order Instituting Administrative and Cease-and-Desist Proceedings, June 30, 2009 ("OIP") [SEC Doc. No. 1]. The OIP alleged, among other things, that Brown violated the antifraud provision of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 by inducing customers into purchasing variable annuities by means of material misrepresentations and omissions. OIP at 6-9. The OIP also alleged that the variable annuities that were sold by Brown to certain customers were unsuitable for those customers' ages, incomes and investment objectives. *Id.* The OIP alleged that Brown was not properly licensed to sell variable annuities and that Brown and Collins falsely listed Collins as the representative who sold certain customers variable annuities in order to make it appear that Collins and not Brown sold the annuities. *Id.*

The OIP further alleged that Collins violated the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, failed to reasonably supervise Brown, and, by placing his name on the new account forms of Brown's customers, had aided and abetted and caused Prime Capital's violations

5

of the books and records requirement of Rule 17a-3, 17 CFR § 240.17a-3.  OIP at

15-16.

During the initial administrative proceedings there was conflicting testimony

regarding the manner in which variable annuities were sold to five  customers.  In

exchange for what he believed was a promise of leniency for cooperating, Brown

admitted to violating Florida's prohibition against him selling variable annuities to

new elderly customers.  Opinion at 7.  He then implicated Collins in allegedly

helping to conceal that violation by listing Collins as the financial representative

on the customer's new account forms, having Collins get credit for the sales, and

then sharing the commissions for such sales.  *Id.*

In contrast, Collins testified that the customers at issue were not Brown's

customers, but rather were Collins's customers, and that it was he – and not Brown

– who made the recommendation for the customers to purchase the annuities,

provided the prospectuses to them, and discussed the costs and risks associated

with the annuities.  *Id.*[1]

---

[1] During the administrative proceeding  and in the subsequent appeal to the
Commission, Collins alleged that Brown's testimony regarding the variable
annuity sales was not credible because Brown was extremely upset with Collins
because Collins had previously refused to testify in support of Brown at Brown's
hearing with the State of Florida.  *Id.* Unbeknownst to Collins, at the time of the
administrative proceeding Brown also believed that he would receive leniency
from the Commission in exchange for his testimony against Collins and, in fact,
Brown had been prepared for testimony at the administrative hearing by the

5.     On June 25, 2010 the ALJ issued an Initial Decision that concluded that Collins had violated the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, and that he violated Exchange Act Sections 15(b)(4)(E) and 15(b)(6)(A), 15 U.S.C. §§ 78*o*(b)(4)(E) and (b)(6)(A), by failing reasonably to supervise Brown in connection with the sale of variable annuities to five customers.  Initial Decision, June 25, 2010 ("Initial Decision") at 1-2, 45, 52.  The Initial Decision also concluded that Collins had aided and abetted and caused Prime Capital's violations of the books and records requirements of Exchange Act Section 17(a)(1), 15 U.S.C. § 77q(a)(1) and Rule 17a-3, 17 C.F.R. § 240.17a-3.  Initial Decision at 48.

The ALJ ordered Collins to disgorge $2,915 in sales commissions (related to the sale of variable annuities to two customers), barred him from association with a broker-dealer, and ordered him to pay a maximum third-tier civil penalty of $130,000.[2]  Initial Decision at 55-59.  In calculating the civil penalty the ALJ

---

Commission's lawyers.  Opinion at 27-28.  Brown's lawyer later revealed that Brown testified against Collins under a cooperation agreement and that agreement had not been honored by the Commission because no leniency was shown to Brown.  *Id.*

[2] Section 21B of the Exchange Act, 15 U.S.C. §78u and Section 203(i) of the Advisers Act, 15 U.S.C. §80b-3i establish a three tier system of civil penalties in SEC administrative proceedings.  For a natural person the maximum third tier

considered all of the events at issue in the proceeding to be one course of action resulting in one unit of violation.  Initial Decision at 58.  Collins also settled an administrative proceeding with the State of Florida related to his insurance license that concerned substantially the same conduct that was at issue in the SEC administrative proceeding for $5,000 and one year of probation for his insurance license. Order Denying Collins's Motion for Reconsideration of Civil Penalties ("Reconsideration Order"), at 3-6.  Collins appealed the ALJ's decision to the -Commission, arguing that there was insufficient evidence to support the finding that Collins had violated the antifraud provisions of the federal securities laws or that he failed to reasonably supervise Brown.  Collins also contended in his appeal that the imposition of a maximum third tier civil penalty of $130,000 – which was 44  times the amount of disgorgement that Collins was ordered to pay – was unwarranted by the evidence presented at the hearing and was a violation of the Eighth Amendment's Excessive Fines Clause.  *Id*. at 40-46.

In its February 27, 2012  Opinion,  the Commission vacated the ALJ's finding that Collins had violated the antifraud provisions of the federal securities laws.  Opinion at 4, 14.  The Opinion also held that a third tier civil penalty of $135,000 was unwarranted because, among other things, Collins' conduct did not

---

penalty for each act or omission is $130,000, the maximum second tier penalty is $65,000 and the maximum first tier civil penalty is $6,500.

create a risk of substantial losses to his customers and did not result in substantial pecuniary gain. Opinion at 25.

The Commission held, however, that Collins failed to adequately supervise Brown, that Collins was a cause of Brown's antifraud violations and that Collins aided and abetted and was a cause of Prime Capital's books and records violations. Opinion at 14-17. The Commission required Collins to pay $2,915 in disgorgement. Opinion at 22.

In determining the appropriate civil penalty for these reduced violations, the Commission held that a maximum second tier civil penalty of $65,000 was appropriate. But instead of reducing the civil penalty to that amount, the Order disregarded the ALJ's determination that Collins' conduct should be treated as one unit of violation and instead held that a maximum second tier civil penalty should be imposed on Collins for <u>each of the five</u> customers at issue – thereby resulting in a total civil penalty imposed on Collins of $310,000.[3] Opinion at 25-26. The Commission rejected Collins' argument that the large civil penalties imposed on

---

[3] For conduct that occurred from February 3, 2001 through February 14, 2005, the maximum second-tier penalty that can be imposed is $60,000. For conduct that occurred after February 14, 2005, the maximum second-tier penalty is $65,000. *See* 17 C.F.R. §§ 201.1002, 201.1003. Because of differences in the timing of when the annuities were sold to each of the five customers at issue, the Order imposed on Collins three maximum second tier civil penalties of $60,000 for three of the customer and two maximum second tier civil penalties of $65,000 on the two other customers for total civil penalties of $310,000.

him in the Initial Decision and in the Opinion were in violation of the Excessive Fines Clause of the Eighth Amendment by saying only that "[t]he three-tier penalty structure was established by Congress, and the penalties we impose are well within the limits set forth in the statute and are consistent with the seriousness of Brown's and Collins's misconduct.'"  Opinion at 27.  The Commission also imposed other sanctions on Collins including a bar from associating with a broker-dealer or investment advisor with a right to reapply after 2 years.  Opinion at 18-21.

Collins moved for reconsideration, arguing that the dramatic increase in the total civil penalty imposed on him was error in  light of the Commission's finding that he was not a primary violator of the antifraud provisions, his conduct did not expose customers to a significant risk of loss, and did not result in substantial financial gain.  Motion for Reconsideration at 4.  Collins also argued that the civil penalty violated the Excessive Fines Clause of the Eighth Amendment.

On April 5, 2012, the Commission denied the Motion for Reconsideration. Reconsideration Order, Apr. 5, 2012 [SEC Doc. No. 644].  In the Reconsideration Order the Commission offered only the briefest justification for its dramatic increase of the civil penalty, saying that "the civil penalty imposed in the Initial Decision is irrelevant" and that "failures to supervise are serious violations." Reconsideration Order at 3.  In addition, the Reconsideration Order also attempted to explain the significant difference in the civil penalties imposed by the Order

10

($310,000) with the civil penalties imposed by the State of Florida for substantially the same conduct ($5,000) by saying that the State of Florida matter involved two investors and the Commission's matter involved five investors (including the two at issue in the proceeding) and that the State of Florida had alleged that Collins made misrepresentations on insurance applications while the Commission's case involved a failure to supervise Brown.   Reconsideration Order at 4.   The Commission also again rejected Collin's argument that the amount of the civil penalties violated the Excessive Fines Clause of the Eighth Amendment and held that the civil penalties that it imposed were consistent with the seriousness of Collin's violations and within the statutory framework for civil penalties. Reconsideration Order at 5.

      This appeal followed.

## SUMMARY OF ARGUMENT

      The imposition by the Commission of $310,000 in civil penalties on Collins – more than twice the amount imposed by the ALJ for more serious violations that were rejected by the Commission and over 106 times the amount of disgorgement ordered – was arbitrary and capricious and an abuse of discretion.  The violations in this case were far less serious than the more egregious types of fraud and deceipt the Commission often punishes, they caused no significant financial loss to investors, Collins had minimal gain from the few transactions at issue, and the

penalty was far out of proportion with the usual amounts of penalties imposed by the commission.  The Commission's cursory explanation for the penalties it imposed failed adequately to explain the Commission's reasoning and failed to reconcile its result with the relevant statutory considerations or the Commission's usual practice in other cases.

The extreme penalties imposed by the Commission were so punitive and so out of line with the minimal financial consequences and disgorgement involved in this case that they constituted excessive fines in violation of the Eighth Amendment.  A penalty constitutes and excessive fine if it is imposed as punishment and is grossly disproportional to the nature of the offense.  Here, civil penalties of 106 times the amount of disgorgement in a case involving no substantial risk of monetary loss to investors, where Collins was held not to be a primary violator of any of the anti-fraud provisions of the securities laws, and where his violations were found subject to a lower second tier of civil penalties is indeed grossly disproportional to the nature of the offense.  As such, those penalties violate the Excessive Fines Clause of the Eighth Amendment.

## STANDING

Collins has standing to challenge the civil penalty imposed on him by the Commission as he is directly injured thereby.

## ARGUMENT

I. **THE COMMISSION ABUSED ITS DISCRETION BY IMPOSING CIVIL PENALTIES OF 106 TIMES THE AMOUNT OF DISGORGEMENT AND MORE THAN TWICE WHAT THE ALJ IMPOSED EVEN AT A MISTAKENLY HIGHER PENALTY LEVEL.**

Under the Administrative Procedures Act this Court will reverse sanctions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See* 5 U.S.C. § 706(2)(A); *Rapoport v. SEC,* 682 F.3d 98, 103 (D.C. Cir. 2012); *Rockies Fund, Inc. v. SEC*, 428 F.3d 1088, 1092-93 (D.C. Cir. 2005). In this case, the $310,000 civil penalty imposed by the Commission was dramatically out of step with the nature of the offense, the partial reversal of the ALJ, the amount of disgorgement, and the Commission's penalties in other cases. The Commission also failed adequately to explain or justify its anomalous results in light of the statutory scheme and the Commission's own findings that Collins's conduct was less egregious than found by the ALJ. The amount of the civil penalty thus is arbitrary and capricious and should be vacated.

Both the Exchange Act and the Advisers Act authorize the Commission to impose civil monetary penalties for each willful act or omission in violation of the federal securities laws. Exchange Act Section 21B, 15 U.S.C. § 78u; Advisers Act Section 203(i), 15 U.S.C. § 80(b)(3)(i). Under these sections the Commission may impose one of three tiers of penalties depending on the nature of the violation: first-tier penalties of up to $6,500 for violations of the securities laws; second-tier

13

penalties of up to $65,000 for violations of the securities laws that involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; or third-tier penalties of up to $130,000 for violations that satisfy the requirements of a second-tier civil penalty and resulted in substantial losses or created significant risk of substantial losses to other persons or resulted in substantial pecuniary gain.  With regard to Petitioner Collins, the ALJ held that while the commissions he received from the sales of annuities were "not monumental by Wall Street standards" they were substantial in their context and therefore Collins'  conduct qualified for a third-tier civil penalty.  Initial Decision at 58.  The ALJ also held that it was appropriate to treat the sales of annuities to the five customers as one course of conduct and therefore imposed a one-time third-tier civil penalty on Collins of $130,000.  *Id.*

In its Opinion, the Commission vacated the ALJ's finding that Collins's conduct qualified for a third-tier civil penalty because his conduct "did not expose customers to significant risk of substantial pecuniary loss or result in substantial gain."  Opinion at 25.  Instead, the Opinion held that Collins's conduct qualified for a maximum second-tier civil penalty because he knowingly allowed Brown to defraud customers through his failure to supervise.  *Id.* However, instead of treating Collins's conduct as one unit of violation as the ALJ had done, the Commission imposed five maximum second-tier penalties on Collins representing

14

one civil penalty for each of the five customers at issue for total civil penalties of $310,000.  The Commission does not adequately explain its justification for so dramatically increasing the total civil penalties imposed on Collins while at the same time finding his conduct only qualified for the lower second-tier civil penalties.

In considering whether a civil penalty is in the public interest, the Commission may consider (1) whether the act or omission involved fraud; (2) whether the act or omission resulted in harm to others; (3) the extent to which any person was unjustly enriched, taking into account restitution made to injured persons; (4) whether the individual has committed previous violations; (5) the need to deter such person and others from committing violations; and (6) such other matters as justice may require.  15 U.S.C. § 80b-3(i)(3).

In considering whether to impose civil penalties the Commission also considers the age of the violation, the degree of harm to investors and the marketplace resulting from the violation, and the combination of sanctions against the respondent. *See Marshall E. Melton*, 56 S.E.C. 695, 698 (2003); *KPMG Peat Marwick LLP*, 54 S.E.C. 1135, 1192 (2001); *WHX Corp. v. SEC*, 362 F.3d 854, 859-860 (D.C. Cir. 2004).  Whether there is a reasonable likelihood of such violations in the future must also be considered. *KPMG*, 54 S.E.C. at 1185.  The amount of a sanction depends on the facts of each case and the value of the

15

sanction in preventing a recurrence. *See Berko v. SEC*, 316 F.2d 137, 141 (2d Cir. 1963); *see also In the Matter of Leo Glassman*, 46 S.E.C. 209, 211-12 (1975).

Under this statutory scheme, it is an abuse of direction for the Commission to impose sanctions that are "palpably disproportionate to the violation." *McCarthy v. SEC*, 406 F.3d 179, 190 (2d Cir. 2005). Courts have found SEC sanctions to be excessive in cases such as this one where the likelihood of future violation is slight, the conduct is old, and the conduct occurred in isolated instances. *Monetta Fin. Servs. v. SEC*, 390 F.3d 952, 957 (7th Cir. 2004). When the Commission imposes draconian civil penalties on an individual the Commission has a higher burden of explaining and justifying its decision. *Steadman v. SEC*, 603 F.2d 1126, 1139 (5th Cir. 1979) ("We subscribe to the common-sense notion that the greater the sanction the Commission decides to impose, the greater is its burden of justification."), *aff'd*, 450 U.S. 91 (1981)

## A. The Commission's Decision Was Arbitrary, Capricious and an Abuse of Discretion

In deciding to impose $310,000 in civil penalties on Collins the Commission offered only the briefest of explanations, stating in a conclusionary manner that Collins's failure-to-supervise violations allowed Brown to defraud customers. The Commission did not take into account the numerous other factors supporting a smaller civil penalty including the lack of any prior violations by Collins, the lack

16

of any primary violations of the antifraud provisions of the federal securities laws by Collins, the age of the violations, the single and limited course of conduct, the other significant sanctions the Order imposed, and the lack of any significant gain to him and loss to the customers.  Additionally, the Initial Decision found that Collins had no other regulatory issues other than the matters involved in this proceeding, Initial Decision at 13, and the Commission's opinion found that a significant part of the conduct at issue in this proceeding was so old as to be outside of the statute of limitations, Opinion at 20.  The Commission's imposition of $310,000 in civil penalties is 106 times the amount of disgorgement in a case where the Commission's Opinion specifically found that Collins was not a primary violator of the antifraud provisions of the federal securities laws and that Collins's conduct did not create a substantial risk of loss to investors or result in significant financial gain for himself.

Further evidence that the Commission's imposition of $310,000 in civil penalties was excessive, arbitrary, and capricious can be found by comparing these civil penalties to the $5,000 civil penalty that was imposed on Collins by the State of Florida for substantially the same conduct.  The Commission's explanation, Reconsideration Order at 4, that the State of Florida action involved three less investors and a slightly different allegation related to the insurance laws does not even remotely justify the drastically larger penalties imposed.  While it is certainly

17

important to adequately supervise subordinates in the securities industry, and the failure to do so can allow others to do harm, such violations still must be placed in context and compared to the many far more serious violations of the securities laws at issue in other cases when determining whether the violations here are so egregious as to warrant such steep penalties out of all proportion to the limited harm and gain involved.

The imposition of $310,000 in civil penalties in a matter involving $2,915 in disgorgement is an arbitrary and capricious departure from the Commission's usual practice of seeking and imposing civil penalties that approximately match or bear some relationship to the amount of disgorgement.  In other matters involving violations of the antifraud provisions of the federal securities laws, Commission opinions, ALJ opinions, and court decisions all indicate that the Commission's practice is to seek civil penalties that relate to the amount of disgorgement ordered. For example, in a Commission opinion involving secret cash payments to a state treasurer in return for state securities business, the Commission ordered disgorgement of $938,353.78, plus prejudgment interest in the amount of $459,516.84, but ordered a civil penalty of only $500,000 ($100,000 for each of 5 violations, which was less than the maximum penalty that could be imposed).  *In the Matter of Guy P. Riordan,* 2009 SEC LEXIS 4166, Admin. Proc. File No. 3-12829 (Dec. 11, 2009).

In a Commission opinion involving the distribution of materially misleading publications to stimulate broker and retail interest in a company, manipulation of the company's stock, and failure to disclose fully the amount of compensation, the Commission ordered that one violator, who directly and indirectly made material fraudulent and misleading representations to customers, to disgorge $241,167 and pay a civil penalty of $350,000, even where the individual had a history of violating securities laws. *In the Matter of Daniel R. Lehl, Robert Schlien, American Capital Network, Inc., Melvin L. Levine, William David Jones, And Philip M. Georgeson*, 55 S.E.C. 843 (May 17, 2002).

And in a Commission opinion involving defrauding advisory clients by misstating and omitting material facts in connection with the purchase of securities, the firm and the individual were jointly ordered by the Commission to disgorge $95,000 and the individual was ordered to pay a civil money penalty of only $15,000, as he was found to be the aider and abettor of the firm's primary violation. *In The Matter Of Feeley & Willcox Asset Management Corp. and Michael J. Feeley,* 56 S.E.C. 616 (July 10, 2003).

Similarly, ALJs in other matters have followed the Commission's practice and have imposed civil penalties that relate to the amount of disgorgement. For example, *In the Matter of Gregory O. Trautman*, Admin. Proc. File No. 3-12559, 2009 SEC LEXIS 4173 (Dec. 15, 2009), involved a Respondent who was co-

19

founder, president, and chief executive officer of registered broker-dealer and was alleged to have engaged in a scheme to defraud mutual funds and their shareholders through unlawful late trading and deceptive market timing.  He was ordered by the ALJ to disgorge $608,886, and to pay a civil penalty of $120,000.

Also, *In The Matter Of David Henry Disraeli and Lifeplan Associates, Inc.,* Admin. Proc. File No. 3-12288, 2007 SEC LEXIS 3015 (Dec. 21, 2007), a matter involving an investment adviser who allegedly made material misstatements and omissions in offer and sale of securities to clients, the ALJ ordered the individual to disgorge $84,300, plus prejudgment interest, and to pay a civil penalty of $85,000.

In an SEC proceeding in which a former registered investment adviser and adviser's president and sole owner favored an account in which he had an interest over that of an advisory client in the allocation of securities trades, made material misrepresentations and omitted material facts in hedge fund disclosure documents and marketing materials and in a Form ADV submitted to the Commission, and failed to keep and maintain required records, the Commission ordered that the individual and firm jointly disgorge $211,821 and that they jointly pay a civil monetary penalty of $220,000. *Zion Capital Management LLC And Ricky A. Lang*, Admin. Proc. File No. 3-10659, 2003 SEC LEXIS 2939 (Dec. 11, 2003).

20

In federal court actions the Commission also has sought civil penalties in an amount that relates to the disgorgement it is seeking. For example, in a case involving an individual who was found to have committed securities fraud, aided and abetted violations of the periodic reporting and record keeping requirements of the federal securities laws, and made misrepresentations to and withheld material information from the auditors, "the district court was well within its discretion in setting the civil penalty equal to the disgorgement amount." *SEC v. Yuen*, 272 Fed. Appx. 615, 618 (9th Cir. 2008); *see also*, *SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1193-94 (D. Nev. 2009) (the court imposed a single penalty equal to the amount of disgorgement in a case concerning fraudulent stock offering); *SEC v. Pentagon Capital Mgmt. PLC*, 2012 U.S. Dist. LEXIS 43046, at 22-23 (S.D.N.Y. Mar. 28, 2012) (in a case concerning a scheme to defraud mutual funds in the United States through late trading and deceptive market timing, the court noted that it is far from uncommon to impose civil penalties equal to disgorgement)

Even in cases involving individuals who committed serious violations of the antifraud provision the Commission has sought and courts have imposed civil penalties that bear a close relationship to the amount of disgorgement ordered. *See, e.g.*, *SEC v. Becker*, 2010 U.S. Dist. LEXIS 52623 (S.D.N.Y. May 28, 2010) (imposing third tier penalty equal to defendants' pecuniary gain and disgorgement

21

ordered in a case concerning unregistered offering fraud); *SEC v. Great Am. Techs., Inc.*, 2010 U.S. Dist. LEXIS 34830 (S.D.N.Y. Apr. 8, 2010) (same); *SEC v. Aimsi Technologies, Inc.*, 650 F. Supp.2d 296 (S.D.N.Y. 2009) (same concerning "pump and dump" scheme); *SEC v. World Info. Tech., Inc.*, 590 F. Supp.2d 574 (S.D.N.Y. 2008) (same concerning "pump-and-dump" scheme and payment of kickbacks); *SEC v. Solow*, 554 F. Supp. 2d 1356, 1368 (S.D. Fla. 2008)(same concerning fraudulent trading scheme); *SEC v. Haligiannis*, 470 F. Supp.2d 373 (S.D.N.Y. 2007) (same concerning allegations of materially false statements concerning the performance of one of the companies and defrauding clients in their role as investment advisors); *SEC v. Koenig*, 557 F.3d 736, 744-45 (7th Cir. 2009) (affirming imposition of penalty equal to disgorgement plus prejudgment interest, in a case involving fraudulent accounting strategies developed by CFO); *SEC v. Razmilovic*, 822 F. Supp. 2d 234 (E.D.N.Y. 2011)(same involving fraudulent scheme to inflate the revenue, earnings and other measures of financial performance). *SEC v. Souza*, 2011 U.S. Dist. LEXIS 59626, at 7-8 (D. Cal. 2011) (the court recommended, "a civil penalty be imposed equal to the gross amount of pecuniary gain, i.e. the amount of disgorgement plus prejudgment interest, in order to adequately serve the deterrent function of the civil penalty provision" in a case concerning a Ponzi scheme and 28 investors associated with a church community who were allegedly tricked into investing more than $1 million dollars with the

defendant's investment firm); *SEC v. Haugen*, 2010 SEC LEXIS 611 (SEC 2010) (in a case involving fraud in connection with the sale of securities, the SEC obtained civil penalties in amounts equal to ordered disgorgement against the vice president of sales and marketing and two other defendants , *SEC v. Coadum Advisors, Inc.*, 2010 SEC LEXIS 304 (SEC 2010).

In this case the Commission's only justification for imposing civil penalties on Collins of 106 times the disgorgement was that Collins' failure to supervise violations are serious violations of the securities laws.  However, the cases cited above show that the Commission's standard practice in imposing civil penalties is to impose civil penalties that bear some relationship to the disgorgement ordered. This is the Commission's practice even in cases where individuals were accused of conduct much more serious than what Collins was accused of – including the most serious violations of the antifraud provisions of the federal securities laws where significant losses to investors occurred and/or substantial financial gains accrued to the defendants.

Because the Commission's justifications for the draconian civil penalties imposed in this case were inadequate and out of step with its usual practice, the decision was arbitrary and capricious and an abuse of discretion.

**B. The Commission Failed to Explain Why It Departed From Its Own Precedent When Imposing the Draconian Civil Penalties on Collins.**

The Commission must explain how it arrives at a particular amount for a civil penalty and courts will vacate the imposition of civil penalties when the Commission does not provide "meaningful consideration" of the circumstances of the case and does not adequately explain its reasoning. *Rockies Fund, Inc. v. SEC*, 428 F.3d 1088, 1099 (D.C. Cir. 2005) (vacating "third-tier" civil penalties "because the SEC did not explain its reasoning" for the sanctions or "even cursorily explain" why the necessary elements for such sanctions were satisfied); *see also Jost v. Surface Transp. Bd.*, 194 F.3d 79, 85 (D.C. Cir. 1999) ("The requirement that agency action not be arbitrary and capricious includes a requirement that the agency adequately explain its result").

Here the Commission made no adequate attempt to explain why it departed from its usual practice of tying the amount of civil penalties to the amount of disgorgement, or how it justified increasing the total penalty even while decreasing the severity of the violations and the penalty tier being applied. The Supreme Court has explained that "[i]f the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which

24

must be precise from what the agency has left vague and indecisive." *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947).

## II.    THE CIVIL PENALTIES IMPOSED BY THE COMMISSION VIOLATE THE EXCESSIVE FINES CLAUSE OF THE EIGHTH AMENDMENT BECAUSE THEY ARE GROSSLY DISPROPORTIONAL TO THE GRAVITY OF COLLINS'S OFFENSE.

The Eight Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." UNITED STATES CONST., Amend. VIII. A monetary penalty violates the Excessive Fines Clause if it constitutes "'a payment to a sovereign as punishment for some offense'" and "is grossly disproportional to the gravity of" the offense. *United States v. Bajakajian*, 524 U.S. 321, 327, 334 (1998) (citation omitted), *superseded on other grounds, as stated in United States v. Jose,* 499 F.3d 105 (1st Cir. 2007).

In this case there is little doubt that the $310,000 penalty is punishment for the offense of violating the securities laws, and thus a "fine" subject to the Eight Amendment. Collins was separately ordered to disgorge the commissions he received on the transactions in question and there was no financial loss to the few customers involved. In setting the fine at over 106 times the only compensatory or remedial amounts involved it seems self-evident that the purpose of the penalty was punitive. Because civil penalties may only be imposed on persons having "willfully violated" the securities laws  or failed to supervise a person having committed such a willful violation, 15 U.S.C. § 80b-3(i)(1)(A), and have as one

25

purpose deterrence, *id*. § 80b-3(i)(3)(E), they bear classic indicia of punishment. *See Bajakajian*, 524 U.S. at 329 ("deterrence, however, has traditionally been viewed as a goal of punishment"); *see also United States v. Morse*, 1997 WL 181043 at *3 (S.D.N.Y. Apr. 14, 1997) ("The three-tier structure of the penalty provision, which raises the maximum penalty in relation to the culpability of the defendant, is clearly fashioned for the purposes of deterrent rather than remedial effect. The legislative history also indicates that Congress intended for the penalties to have a deterrent effect. The structure and legislative history of these penalties clearly show that the civil penalties under Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act do not have a solely remedial purpose.").

The penalty imposed on Collins also is "grossly excessive" to the gravity of the offense he was held to have committed. As described in the previous section, the Commission found that he had not engaged in any primary violation involving fraud, he had minimal personal gain, which he disgorged, and there was no significant loss or risk of loss to the few customers at issue. Opinion at 25. The Commission's cursory characterization of Collin's conduct as "egregious" is little more than a disparaging label lacking analysis. *All* offenses against the securities laws are obviously and necessarily worthy of condemnation, otherwise they would not be offenses in the first place. But the Commission makes no effort to situate

26

Collins's violations in this case along the spectrum of egregiousness as compared to other securities law violations subject to the same scheme of civil penalties. The indirect and limited violations by Collins were certainly far less egregious than the violations committed by Brown himself, or the violations by thousands of fraudsters, schemers, and market manipulators who find themselves subject to SEC scrutiny and eventual civil penalties. Yet the Commission offered no reason why it imposed the maximum available penalty on Collins, rather than a lesser penalty within the discretionary range available under the statutory scheme.

Merely because the penalty did not *exceed* the maximum penalty allowable by statute does not mean it is not excessive where Congress offered a broad range of penalties –including the option of a *de minimis* or moderate penalty – for second-tier violations. The Commission's reliance on the broad range of penalties available under the statutory scheme, Opinion at 27, thus does not justify its own choice to impose the maximum penalty and says nothing about whether that penalty is grossly disproportional to the seriousness of the offense. See *In the Matter of FXC Investors Corp.*, 2002 WL 31741561(Admin Pro. File No. 3-10625, December 9, 2002), at *21 n. 13 ("The Division's proposed civil penalties are not immune from scrutiny under the Excessive Fines Clause simply because they are beneath the tier-two maximum. A sanction that is within statutory limits can still be unconstitutional under the Eighth Amendment principle of proportionality. No

27

sanction is <u>per se</u> constitutional."); *cf. Marrero v. Dugger*, 823 F.2d 1468, 1472

n. 7 (11th Cir. 1987) (analogous Eigth Amendment proportionality rule applicable

to prison sentences that are within statutory sentencing limits; noting that the

Supreme Court has made it "quite clear that a sentence within statutory limits can

be found unconstitutional [under the Eighth Amendment]. . . . [T]he limit staked

out by the legislature is not of itself a barrier to the reach of the United States

Constitution."), *cert. denied,* 485 U.S. 965, 970 (1988)

    Other aspects of the penalty, however, demonstrate that it was indeed

grossly disproportional to Collins's offense.  For example, the Commission's

decision to multiply the penalty by the number of customers affected – even

though they did not suffer significant loss and Collins obtained no significant gain

– is an indicia that the fine was disproportional. In determining disproportionality,

the limited harm (or wrongful gain) caused by the violations is a significant factor

pointing to excessiveness in this case.  *See United States ex rel. Bunk v. Birkart*

*Globistics Gmbh & Co.,* 2012 WL 488256 (E.D. Va., Feb. 14, 2012), at *4 ("In

order to determine whether a civil penalty is 'grossly disproportional to the gravity

of a defendant's offense' for Eighth Amendment purposes, the Court must first

determine the 'harm' caused by Defendants' conduct.").  Also significant is the

fact that the total amount of the fine escalated considerably not because of the

perceived severity of the violation – the Commission actually rejected the more

28

severe violations found by the ALJ against Collins and reduced the penalty from third-tier to second-tier – but because the Commission found multiple violations in what he ALJ viewed as a single course of conduct. But where multiple applications of an otherwise limited fine result in a large total, the final result is more likely to be disproportional to the overall seriousness of the violator's conduct. *See id.* at *10-*11 (holding that huge civil penalty generated my adding multiple instances of false invoicing under the False Claims Act, but which caused little harm, to be grossly disproportionate and in violation of the Eighth Amendment).

In the securities area, the limited nature of the harm caused by violations leading to a civil penalty was the basis for an ALJ's conclusion that a a second-tier penalty of a mere $100,000 to be grossly disproportional and hence a violation of the Excessive Fines Clause. *See In the Matter of FXC Investors Corp.*, 2002 WL 31741561(Admin Pro. File No. 3-10625, December 9, 2002), at *21 & n. 13. In *FXC Investors,* the ALJ found that such a fine, though imposed for multiple offenses and hence within the statutory maximum, was excessive as to a "mom and pop" investment advisor. *Id*. at *20-*21 It reached that conclusion notwithstanding that the violations involved fraudulent advertising and that the offenders had previously been subject to enforcement actions for false advertising. *Id*. at *16

Finally, the many cases cited in the previous section showing that civil penalties are generally imposed in reasonable proportion to the amount of financial loss or disgorgement involved also demonstrate that a penalty 106 times the amount of disgorgement is grossly disproportional in this case. In the somewhat analogous punitive damages context, such a high multiple of actual damages would be excessive. See *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 581 (1996) (looking to ratio between actual or potential harm and punitive damages). While such Due Process rules do not directly apply in this case, "some courts have considered the amount of the civil penalties as a multiple of actual damages sustained as a result of a defendant's conduct, taking guidance from the Supreme Court's decisions concerning how to evaluate the constitutionality of punitive damages awards under the Due Process Clause of the Fifth and Fourteenth Amendments" *United States ex rel. Bunk,* 2012 WL 488256 at *10; *cf. Morse Diesel Intern., Inc. v. United States*, 79 Fed. Cl. 116, 129 (Ct. Fed. Cl. 2007) (upholding civil penalties of roughly 2 to 3 times the amount of the injury and citing to *BMW* for the analogous proposition that punitive damages should not exceed a 10 to 1 ratio).

The Commission specifically held that Collins was not a primary violator of the antifraud provisions of the federal securities laws. In addition, none of the customers at issue in this case were found to have lost any money in their variable annuity investment, and Collins's own gain from commissions was minimal.

30

Nevertheless, the Commission imposed five second tier civil penalties that are excessively punitive and will financially ruin Collins.  This is on top of the Commission's taking away his livelihood by barring him from associating with a broker-dealer or investment advisor.  Opinion at 18-21.  Consideration of the facts in this case demonstrates that second tier civil penalties are punitive and grossly disproportional to the gravity of his offense and thus violate the Excessive Fines Clause of the Eighth Amendment.

## CONCLUSION

For the reasons stated above, Collins respectfully asks this Court to vacate the civil penalties imposed on him by the Commission because the Commission abused its discretion and because the sanctions are without legal and factual justification.

Respectfully submitted,


s/ Robert G. Heim
Robert G. Heim
MEYERS & HEIM LLP
444 Madison Avenue, 30th Floor
New York, NY 10022
 (212) 355-7188

*Counsel for Petitioner Matthew J. Collins*

Erik S. Jaffe
ERIK S. JAFFE, P.C.
5101 34th Street, N.W.
Washington, D.C.  20008
(202) 237-8165

*Of Counsel*


Dated:    October 4, 2012

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Brief for Petitioner complies with the 14,000 word type-volume limitation of Fed. R. Civ. P. 32(a)(7)(B) and Circuit Rule 32(a)(2) in that it contains 7131 words, excluding the table of contents, table of authorities, and certificates of counsel.  The number of words was determined through the word-count function of Microsoft Word.  Counsel agrees to furnish to the Court an electronic version of the brief upon request.


s/ Robert G. Heim
Robert G. Heim


## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 4th day of October, 2012, I caused the above Corrected Brief for Petitioner to be served via the ECF system on:


Jacob Stillman
Mark Pennington
Paul Gerard Alvarez
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549


s/ Erik S. Jaffe
Erik S. Jaffe

# **<u>ADDENDUM</u>**

## <u>TABLE OF CONTENTS: STATUTES</u>

**Statutes**

**15 U.S.C. § 78y**............................................................................4

**15 U.S.C. 78o(b)**..........................................................................8

**5 U.S.C. § 706**.............................................................................9

**Advisers Act of 1940, 15 U.S.C. § 80b-3(i)**................................4

**Exchange Act of 1934, 15 U.S.C. § 77t(d)** ................................2

**Rule 10b-5, 17 C.F.R. § 240.10b-5** ............................................10

**Rule 17a-3, 17 C.F.R. 240.17a-3(17)(i)(A)**.................................11

**Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b)** ............11

**Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a)** ...........12

**U.S. Const. Amend. VIII.** ..........................................................13

## STATUTES ADDENDUM

**Exchange Act of 1934, 15 U.S.C. § 77t(d) provides in relevant part:**

(d) Money penalties in civil actions.

(1) Authority of Commission. Whenever it shall appear to the Commission that any person has violated any provision of this title [15 U.S.C. §§ 77a et seq.], the rules or regulations thereunder, or a cease-and-desist order entered by the Commission pursuant to section 8A of this title [15 U.S.C. § 77h-1], other than by committing a violation subject to a penalty pursuant to section 21A of the Securities Exchange Act of 1934 [15 U.S.C. § 78u-1], the Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation.

(2) Amount of penalty.

(A) First tier. The amount of the penalty shall be determined by the court in light of the facts and circumstances. For each violation, the amount of the penalty shall not exceed the greater of (i) $5,000 for a natural person or $50,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation.

(B) Second tier. Notwithstanding subparagraph (A), the amount of penalty for each such violation shall not exceed the greater of (i) $50,000 for a natural person or $250,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation, if the violation described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.

(C) Third tier. Notwithstanding subparagraphs (A) and (B), the amount of penalty for each such violation shall not exceed the greater of (i) $100,000 for a natural person or $500,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation, if—

(I) the violation described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and

(II) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

(3) Procedures for collection.

(A) Payment of penalty to Treasury. A penalty imposed under this section shall be payable into the Treasury of the United States, except as otherwise provided in section 308 of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7246] and section 21F of the Securities Exchange Act of 1934 [15 U.S.C. § 78u-6].

(B) Collection of penalties. If a person upon whom such a penalty is imposed shall fail to pay such penalty within the time prescribed in the court's order, the Commission may refer the matter to the Attorney General who shall recover such penalty by action in the appropriate United States district court.

(C) Remedy not exclusive. The actions authorized by this subsection may be brought in addition to any other action that the Commission or the Attorney General is entitled to bring.

(D) Jurisdiction and venue. For purposes of section 22 of

this title [15 U.S.C. § 77v], actions under this section shall be actions to enforce a liability or a duty created by this title [15 U.S.C. §§ 77a et seq.].

(4) Special provisions relating to a violation of a cease-and-desist order. In an action to enforce a cease-and-desist order entered by the Commission pursuant to section 8A [15 U.S.C. § 77h-1], each separate violation of such order shall be a separate offense, except that in the case of a violation through a continuing failure to comply with such an order, each day of the failure to comply with the order shall be deemed a separate offense.

**15 U.S.C. § 78y provides in relevant part:**

(a) Final Commission orders; persons aggrieved; petition; record; findings; affirmance, modification, enforcement, or setting aside of orders; remand to adduce additional evidence.

(1) A person aggrieved by a final order of the Commission entered pursuant to this title [15 U.S.C. §§ 78a et seq.] may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

**Advisers Act of 1940, 15 U.S.C. § 80b-3(i) provides in relevant part:**

(i) Money penalties in administrative proceedings.

(1) Authority of Commission.

(A) In general. In any proceeding instituted pursuant to subsection (e) or (f) against any person, the Commission may

Add.4

impose a civil penalty if it finds, on the record after notice and opportunity for hearing, that such penalty is in the public interest and that such person--

    (i) has willfully violated any provision of the Securities Act of 1933 [15 U.S.C. §§ 77a et seq.], the Securities Exchange Act of 1934 [15 U.S.C. §§ 78a et seq.], the Investment Company Act of 1940 [15 U.S.C. §§ 80a-1 et seq.], or this title [15 U.S.C. §§ 80b-1 et seq.], or the rules or regulations thereunder;

    (ii) has willfully aided, abetted, counseled, commanded, induced, or procured such a violation by any other person;

    (iii) has willfully made or caused to be made in any application for registration or report required to be filed with the Commission under this title [15 U.S.C. §§ 80b-1 et seq.], or in any proceeding before the Commission with respect to registration, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or has omitted to state in any such application or report any material fact which was required to be stated therein; or

    (iv) has failed reasonably to supervise, within the meaning of subsection (e)(6), with a view to preventing violations of the provisions of this title [15 U.S.C. §§ 80b-1 et seq.] and the rules and regulations thereunder, another person who commits such a violation, if such other person is subject to his supervision;

Add.5

(B) Cease-and-desist proceedings. In any proceeding instituted pursuant to subsection (k) against any person, the Commission may impose a civil penalty if the Commission finds, on the record, after notice and opportunity for hearing, that such person--

(i) is violating or has violated any provision of this title [15 U.S.C. §§ 80b-1 et seq.], or any rule or regulation issued under this title [15 U.S.C. §§ 80b-1 et seq.]; or

(ii) is or was a cause of the violation of any provision of this title [15 U.S.C. §§ 80b-1 et seq.], or any rule or regulation issued under this title [15 U.S.C. §§ 80b-1 et seq.].

(2) Maximum amount of penalty.

(A) First tier. The maximum amount of penalty for each act or omission described in paragraph (1) shall be $5,000 for a natural person or $50,000 for any other person.

(B) Second tier. Notwithstanding subparagraph (A), the maximum amount of penalty for each such act or omission shall be $50,000 for a natural person or $250,000 for any other person if the act or omission described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.

(C) Third tier. Notwithstanding subparagraphs (A) and (B), the maximum amount of penalty for each such act or omission shall be $100,000 for a natural person or $500,000 for any other person if--

(i) the act or omission described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or

reckless disregard of a regulatory requirement; and

(ii) such act or omission directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons or resulted in substantial pecuniary gain to the person who committed the act or omission.

(3) Determination of public interest. In considering under this section whether a penalty is in the public interest, the Commission may consider—

(A) whether the act or omission for which such penalty is assessed involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;

(B) the harm to other persons resulting either directly or indirectly from such act or omission;

(C) the extent to which any person was unjustly enriched, taking into account any restitution made to persons injured by such behavior;

(D) whether such person previously has been found by the Commission, another appropriate regulatory agency, or a self-regulatory organization to have violated the Federal securities laws, State securities laws, or the rules of a self-regulatory organization, has been enjoined by a court of competent jurisdiction from violations of such laws or rules, or has been convicted by a court of competent jurisdiction of violations of such laws or of any felony or misdemeanor described in section 203(e)(2) of this title [subsec. (e)(2) of this section];

(E) the need to deter such person and other persons from committing such acts or omissions; and

Add.7

(F) such other matters as justice may require.

(4) Evidence concerning ability to pay. In any proceeding in which the Commission may impose a penalty under this section, a respondent may present evidence of the respondent's ability to pay such penalty. The Commission may, in its discretion, consider such evidence in determining whether such penalty is in the public interest. Such evidence may relate to the extent of such person's ability to continue in business and the collectability of a penalty, taking into account any other claims of the United States or third parties upon such person's assets and the amount of such person's assets.

## 15 U.S.C. 78o(b) provides in relevant part:

(b) Manner of registration of brokers and dealers.
------(1)-(3) omitted-----
(4) The Commission, by order, shall censure, place limitations on the activities, functions, or operations of, suspend for a period not exceeding twelve months, or revoke the registration of any broker or dealer if it finds, on the record after notice and opportunity for hearing, that such censure, placing of limitations, suspension, or revocation is in the public interest and that such broker or dealer, whether prior or subsequent to becoming such, or any person associated with such broker or dealer, whether prior or subsequent to becoming so associated—
-----(A)-(D) omitted------

(E) has willfully aided, abetted, counseled, commanded, induced, or procured the violation by any other person of any provision of the Securities Act of 1933 [15 U.S.C. §§ 77a et seq.], the Investment Advisers Act of 1940 [15 U.S.C. §§ 80b-1 et seq.], the Investment Company Act of 1940 [15 U.S.C. §§ 80a-1 et seq.], the Commodity Exchange Act [7 U.S.C. §§ 1 et seq.], this title [15 U.S.C. §§ 78a et seq.], the rules or

regulations under any of such statutes, or the rules of the Municipal Securities Rulemaking Board, or has failed reasonably to supervise, with a view to preventing violations of the provisions of such statutes, rules, and regulations, another person who commits such a violation, if such other person is subject to his supervision. For the purposes of this subparagraph (E) no person shall be deemed to have failed reasonably to supervise any other person, if—

> (i) there have been established procedures, and a system for applying such procedures, which would reasonably be expected to prevent and detect, insofar as practicable, any such violation by such other person, and

> (ii) such person has reasonably discharged the duties and obligations incumbent upon him by reason of such procedures and system without reasonable cause to believe that such procedures and system were not being complied with.

## 5 U.S.C. § 706 provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--

> (1) compel agency action unlawfully withheld or unreasonably delayed; and

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title [5 U.S.C. §§ 556 and 557] or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

**Rule 10b-5, 17 C.F.R. § 240.10b-5 provides:**

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which

operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

**Rule 17a-3, 17 C.F.R. 240.17a-3(17)(i)(A) provides in relevant part:**

(a) Every member of a national securities exchange who transacts a business in securities directly with others than members of a national securities exchange, and every broker or dealer who transacts a business in securities through the medium of any such member, and every borker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934, as amended, (48 Stat. 895, 49 Stat. 1377, 52 Stat. 1075; 15 U.S.C. 78o) shall make and keep current the following books and records relating to its business:

-----(1)-(16) omitted-----

(17) For each account with a natural person as a customer or owner:

(i)

(A) An account record including the customer's or owner's name, tax identification number, address, telephone number, date of birth, employment status (including occupation and whether the customer is an associated person of a member, broker or dealer), annual income, net worth (excluding value of primary residence), and the account's investment objectives. In the case of a joint account, the account record must include personal information for each joint owner who is a natural person; however, financial information for the individual joint owners may be combined. The account record shall indicate whether it has been signed by the associated person responsible for the account, if any, and approved or accepted by a principal of the member, broker or dealer. For accounts in existence on the effective date of this section, the member, broker or dealer must obtain this information within three years of the effective date of the section.

**Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) provides in relevant part:**

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

----(a) omitted----

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement[,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) provides in relevant part:**

(a) Use of interstate commerce for purpose of fraud or deceit. It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 3(a)(78) of the Securities Exchange Act [15 U.S.C. § 78c(a)(78)]) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly--

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

**U.S. Const. Amend. VIII. provides:**

   Excessive bail shall not be required, nor excessive fines imposed, nor cruel
   and unusual punishments inflicted.